UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID FRAZIER, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of <br> Social Security, <br><br> Defendant. | CIVIL ACTION NO. <br> 1:10-CV-10051-PBS |

**MEMORANDUM AND ORDER**

February 22, 2010

Saris, U.S.D.J.

**I. Introduction**

Plaintiff, David Frazier, who has been diagnosed with Post-Traumatic Stress Disorder, Major Depression Disorder, and severe ulnar neuropathy, among other ailments, challenges the final decision of the Commissioner denying him Social Security disability benefits for a closed period between December 2006 and September 2008. The Administrative Law Judge concluded that alcohol abuse was a contributing material factor to plaintiff's disability during this time period. After a review of the record, the Court **ALLOWS** Defendant's Motion for an Order Affirming the Decision of the Commissioner and **DENIES** Plaintiff's Motion to Remand the Case to the Social Security Administration.

1

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff was born in 1966, and reports having been a victim of physical and sexual abuse by his stepfather and various romantic partners. (Administrative Record ("Tr.") 263-65.) The abuse from the most recent partner was severe; his teeth were knocked out, and the beating left scars on his arm. (Id. at 426)

Plaintiff began to abuse alcohol in 2004, and he continued with his excessive drinking until June of 2008. (Id. at 36.) He has had three criminal convictions for driving under the influence and has committed other offenses, including shoplifting. (Id. at 425-427.) The Plaintiff self-reports anywhere from a twelve pack of beer daily in 2004 to a six pack of beer twice a week on Friday and Saturday nights in 2007. (Id. at 273, 392.) He had clean toxicology screenings while on probation from December 2006 to October 2008. (Id. at 437-43, 473.) However, he testified at the hearing before the Administrative Law Judge that he abused alcohol from 2004 to June 2008. (Id. at 36, 63.)

Plaintiff has worked in numerous retail service oriented positions at Aeromac Sports, LLC, Health South and Rehabilitation, Pet Supplies Plus, Walgreen's, and Home Depot. (Id. at 23, 24, 31, 27.) In September 2008, he began studying to become a hairdresser at Blaine hairdressing school. (Id. at 25.)

2

However, by March 2009, he had missed over 170 hours of school due to anxiety. (Id. at 25, 31.)

**B. Mental Impairments**

On September 14, 2004, the Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) by Tim Sullivan, LICSW, MSW, at Arbour Counseling Services. (Tr. 272.) The month following the plaintiff's diagnosis, the Plaintiff was hospitalized after overdosing on Seroquel pills. (Id. at 278.) When he was released from the Lawrence Memorial Hospital after his attempted suicide, the Tri-City Mental Health Center Staff diagnosed the plaintiff with Adjustment Disorder with depressed mood. (Id. at 289.) Mental health professionals diagnosed him with major depressive disorder, moderate PTSD and alcohol abuse.

The plaintiff was referred to Richard Stellar, Ed. D., P.C., on July 26, 2007, for a psychodiagnostic interview by Massachusetts Rehabilitation Commission Disability Determination Services. (Id. at 388-92.) According to Dr. Stellar, plaintiff suffered symptoms consistent with PTSD. (Id. at 391, 393.) In the interview, the plaintiff reported that he drank a six-pack of beer on Friday and Saturday nights, but he did not consider this to be alcohol abuse. (Id. at 392) However, Dr. Stellar did not mention the plaintiff's use of alcohol in his diagnosis. (Id. at 393.) Although the plaintiff denied depression, he acknowledged that he had been depressed in the past. He commented that "I

guess I should be depressed," in light of the death of his roommate in an apartment fire, his unemployment, and the ulnar decompression surgery that he would soon have. (Id. at 391.)

Plaintiff began weekly counseling with Christine Cunningham, LICSW, LADC, at Wayside Youth and Family Support Center in July 2007 as one of the terms of his probation after being arrested in November 2006 for operating under the influence (OUI).[1] (Id. at 424-27.) Ms. Cunningham observed the plaintiff's symptoms, including severe anxiety, depression, inability to sleep, and anti-social behavior. (Id.) Plaintiff reported to her a "25 year history of drinking to excess," and admitted that most of his criminal charges were related to drinking. On July 25, 2007, she diagnosed him with Axis I, alcohol abuse. Id. at 427. After nearly two years of counseling the plaintiff, Ms. Cunningham diagnosed him with both major depression and PTSD, which had, in her opinion, rendered him disabled between December 2006 and October 2008. (Id. at 473.) In August, 2007, Wayside reported that he abused alcohol. (Id. at 422.) On March 4, 2009, Ms. Cunningham wrote to the Office of Disability:

> Although David was drinking to excess during his most recent depressive period, it is my clinical opinion that this was a way of self-medicating his other symptoms and it acted as a coping mechanism for his disabilities. However, his drinking did not cause nor was it material to David's PTSD or major disorders.

---

[1] In addition to counseling, the Plaintiff's probationary terms required that he submit to routine toxicology screenings. (Tr. 422, 437-43.)

4

> Indeed, during the period from 12/06 to 10/08, I
> understand that he was sober (as evidenced by his clean
> tox screens); however, his anxiety and depression
> remained at functionally debilitating levels.

(Id. at 473).

## C. Evidence of Physical Impairments

In November 2005 the plaintiff had arthroscopic surgery on his knee for a torn medial meniscus, which limited the Plaintiff's ability to walk without pain. (Tr. 209, 390.) On May 1, 2007 the plaintiff had severe numbness in his left arm and difficulty using his left hand, even for basic tasks like tying his shoes. (Id. at 435.) This medical condition also interfered with his job as a cashier, as he was unable to handle money with his left hand. (Id.) The plaintiff was diagnosed with ulnar neuropathy by Dr. David H. Weinberg, M.D. and Dr. Mark B. Rohrer, M.D. (Id. at 376-78.) The plaintiff underwent decompression surgery for the ulnar nerve in his left elbow on August 13, 2007. (Id. at 416-417.) The surgery did improve the plaintiff's left arm and hand functioning, but it did not return the plaintiff to "100 percent." (Id. at 29.) He still experiences numbness in his left arm and a delay in grasping with his left hand. (Id.)

## III. THE ALJ HEARING AND FINDINGS

### A. Medical Expert Testimony

Dr. John Ruggiano testified at the hearing before the Administrative Law Judge on March 12, 2009 as an impartial medical expert witness in the case. (Tr. 48.) He is a psychiatrist certified by the American Board of Psychiatry and Neurology. He was provided with the Plaintiff's file in order to review the medical exhibits prior to the hearing. (Id. at 50.) Dr. Ruggiano appears to have had records of Wayside through February 2009, although there were gaps in the weekly treatment notes in 2007. Dr. Ruggiano testified that the Plaintiff suffered from alcohol abuse and anxiety, specifically PTSD. (Id. at 54.) In interpreting the reports, Dr. Ruggiano concluded that the Plaintiff's alcohol abuse was material to the Plaintiff's impairment. (Id. at 56.)

> Q: ... alcohol abuse - do you feel that it's material in this case?
> A: Well in this time period that I have namely from Exhibit 17, I would not be able to differentiate alcohol from his other psychopathology. However, with the new material that I have showing me that in '08 to the present even in '09, he's doing very well without alcohol that allows me to say that it was material.

(Id.) While abusing alcohol, the plaintiff's daily life was moderately impaired, and he had many failed work attempts. His ability to complete a task was a problem in 2007. (Id. at 36, 48.) Absent the alcohol, he was doing "very well" in

6

daily living, and he was relating well to the people he was working with at school. (Id. at 60).

## B. Testimony of the Vocational Expert

Mr. James F. Scarzelli testified as the vocational expert at the hearing. He identified the Plaintiff's past relevant work as photograph developer, assistant manager of a concession stand, concession stand worker and cashier. (Tr. 66-67.) Mr. Scarzelli determined that an individual with the Plaintiff's physical limitations would still have been able to perform the job of cashier or concession stand person. (Id. at 68.) Assuming additional limitations on dealing with the public, Mr. Scarzelli determined that an individual with such limitations would not be able to perform any of the Plaintiff's past relevant work. (Id.) He identified three "[u]nskilled jobs dealing with only co-workers" in the national economy that a person with similar physical limitations to the Plaintiff who was unable to frequently deal with the public could perform. (Id.) These jobs were electronic assembler, light packer, and optical goods polisher. (Id. at 68-69.) When questioned as to whether an individual with one of those three jobs would be able to leave during the day due to anxiety, or whether an individual with ADHD, such as the Plaintiff, would be able to perform the job of light packer, Mr. Scarzelli responded: "Let me clarify - if someone can not attend and concentrate, he or she can't work

anywhere. There's no jobs they can do. Inability to attend or concentrate eliminates a person in the work force entirely." (Id. at 71.)

## C. ALJ Findings

At step five, the ALJ determined that the Plaintiff was not disabled under the Act and not entitled to disability benefits for the closed period of December 2006 and September 2008. (Tr. 8.) The ALJ determined that the Plaintiff was severely impaired due to post traumatic stress disorder and alcohol abuse. (Id. at 10.) The ALJ also found that the Plaintiff was unable to sustain full time employment in his past lines of work during the period at issue:

> I find that the claimant was not able to sustain the requirements of full time employment on an ongoing basis during the period at issue due to marked limitations in his ability to sustain social functioning and marked limitations in his ability to sustain concentration, persistence and pace. The treatment notes from Wayside Youth and Family Support indicate that when he was actively abusing alcohol during the period at issue he was easily distracted and exhibited very poor impulse control.

(Id. at 11.) Additionally, the ALJ found that the Plaintiff would not have been able to transfer his skills to another occupation and sustain employment while abusing alcohol. (Id.)

If the Plaintiff had stopped his substance use, the ALJ found, his remaining impairments "would not cause more than a minimal impact on the [Plaintiff's] ability to perform basic work activities." (Id. at 12.) The ALJ noted:

8

> If the claimant stopped the substance use, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected
> to produce the alleged symptoms; however, the
> claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are
> not credible to the extent they are inconsistent with
> finding that the claimant has no severe impairment or
> combination of impairments . . . .

(Id. at 13.) As evidence that the Plaintiff is not severely impaired when not abusing alcohol, the ALJ Decision refers to the Plaintiff's recent sobriety, as well as his success in applying to and attending hairdressing school and sustaining social relationships. (Id.) Therefore, the ALJ found that the Plaintiff's substance abuse was a contributing material factor to the disability, and that the Plaintiff was not disabled under the Act during the period at issue. (Id.)

## IV. STANDARD

### A. Standard of Review

In reviewing disability and disability insurance decisions made by the Commissioner, the Court does not make de novo determinations. Lizotte v. Sec'y of Health & Human Serv., 654 F.2d 127, 128 (1st Cir. 1981). Rather, this Court "must affirm the [Commissioner's] findings if they are supported by substantial evidence." Cashman v. Shalala, 817 F.Supp. 217, 220 (D.Mass. 1993); see also Rodriguez Pagan v.

9

Sec'y of Health & Human Serv., 819 F.2d 1, 3 (1st Cir. 1987) (stating that the Commissioner's determination must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence") (citation omitted).

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. Nat'l Labor Rel. Bd., 305 U.S. 197, 229 (1938)). Substantial evidence means such relevant evidence as a "reasonable mind, reviewing the evidence in the record as a whole, [would] accept . . . as adequate to support [a] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Serv., 955 F.2d 765, 769 (1st Cir. 1991) (citing Rodriguez v. Sec'y of Health & Human Serv., 647 F.2d 218, 222 (1st Cir. 1981)). In reviewing the record for substantial evidence, "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriquez, 647 F.2d at 222 (quoting Rodriquez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). When a conflict exists in the record, the Commissioner bears the duty to weigh the evidence and resolve material conflicts in testimony. See Richardson, 402 U.S. at 399; Irlanda Ortiz, 955 F.2d at 769. An ALJ's findings of fact, however, are "not conclusive when derived by ignoring evidence, misapplying the law, or judging

10

matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. "Failure of the [Commissioner] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [Commissioner] applied the correct legal standards are grounds for reversal." Weiler v. Shalala, 922 F.Supp. 689, 694 (D.Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)).

## B. Disability Determination Process

An individual may be entitled to Social Security disability benefits by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment is disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner has developed a five-step sequential evaluation process to determine whether a person is disabled. See 20 C.F.R. § 404.1520(a)(4); Goodermote v. Sec'y of Health & Human Serv., 690 F.2d 5, 6-7 (1st Cir. 1982). "Step one determines whether the plaintiff is engaged in substantial gainful activity. If [he] is, disability benefits are denied. If [he] is not, the decisionmaker proceeds to step two, which determines whether the plaintiff has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (internal citations omitted). To establish a severe impairment the plaintiff must "show that he or she has an 'impairment or combination of impairments which significantly limits . . . the abilities and aptitudes necessary to do most jobs.'" Id. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).

If the plaintiff has a severe impairment, the third step is to determine "whether the impairment is equivalent to one of [the] listed impairments that . . . are so severe as to preclude substantial gainful activity." Id. at 141 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). If the impairment is not "conclusively presumed to be disabling," the fourth step evaluates whether the impairment prevents the plaintiff from performing his past work. Id. "If the [plaintiff] is able to perform [his] previous work, [he] is

12

not disabled." Id. (citing 20 C.F.R. § 404.1520(e)). However, if he cannot perform his past work, the inquiry proceeds to the fifth and final step, where the burden shifts to the Commissioner to prove that the plaintiff "is able to perform other work in the national economy in view of [his] age, education, and work experience." Id. at 142, 146 n.5.

## VII. Discussion

Plaintiff argues that the ALJ applied an improper standard in determining that the Plaintiff's alcohol abuse was a material factor in causing his disability. An emergency bulletin issued by the Social Security Administration states that it is "very difficult to disentangle the restrictions and limitations imposed by the substance disorder from those resulting from mental impairment(s)." Emergency Message 96200 (EM-96-94, August 30, 1996). "The fact that substance abuse aggravated her mental illness does not prove that the mental illness itself is not disabling." Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006).

Under the regulations, if it is found that the plaintiff is disabled, and there is additional medical evidence of the plaintiff's substance abuse, it is necessary

13

to determine whether the substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). If the plaintiff would no longer be found to be disabled were he to stop using drugs or alcohol, the substance abuse constitutes a contributing material factor. Id. at § 404.1535(b). If the plaintiff would still be found to be disabled were he to stop using drugs or alcohol, the substance abuse is not a contributing factor material to the determination of disability. Id. Where substance abuse is a contributing factor material to determination of a plaintiff's disability, the plaintiff is not disabled within the meaning of the Social Security Act and is ineligible to receive benefits thereunder. See 42 U.S.C. § 423(d)(2)(C). "The burden of proving that alcoholism was not a contributing factor to the disability determination falls on [the claimant]." Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003).

The ALJ found that if the Plaintiff had stopped his substance use, his remaining impairments "would not cause more than minimal impact on the [Plaintiff's] ability to perform basic work activities." (Id. at 12.) He explained:

> In terms of the claimant's alleged anxiety and post traumatic stress, Dr. Ruggiano testified that after the claimant achieved sobriety, which was after the period at issue, his functioning improved to such a degree his anxiety impairment was no longer severe. The doctor testified that this shows that, in the absence of substance abuse, the claimant's anxiety impairment is

14

>     not severe within the meaning to the regulations. I
>     agree.

(Id. at 13.) Based on Dr. Ruggiano's opinion, the ALJ therefore found the Plaintiff's substance abuse was a contributing material factor to the determination of the disability and the Plaintiff was not disabled under the Act during the period at issue. Plaintiff's treating social worker, Ms. Cunningham, had written a letter expressing her opinion that the Plaintiff's substance abuse was not material to his disability (see id. at 473). The ALJ did not address this opinion.

In most cases, the ALJ must give greater weight to an examining or treating medical expert than to a non-examining or non-treating medical expert. 20 C.F.R. § 416.927(d) (2006). However, this is not the only factor to consider in weighing the opinions of medical experts. Id. The ALJ must also consider a number of other factors, including the supportability of a medical expert's opinion and the consistency of that opinion with the record as a whole. Id.

In this case, the ALJ relied on medical evidence to support his finding that substance abuse was material. See Sklenar v. Barnhart, 195 F. Supp. 2d 696, 700 (W.D. Pa. 2002) ("The need to identify medical evidence supporting the [substance abuse materiality] determination comes as little

15

surprise. The ALJ asked Dr. Ruggiano, a board certified psychiatrist, "Do you have an opinion with a reasonable degree of medical certainty that if the claimant were to discontinue alcohol as he has done for a period of time would any of the psychological problems that the claimant experienced be reversed?" (Tr. 56.) Ruggiano replied, "Well that's what I'm saying by, by saying that what I have a significant improvement in '08 and '09 in the absence of alcohol. So the answer's yes." (Id.) This evidence is such that "a reasonable mind" would accept it "as adequate to support [the ALJ's] conclusion," and therefore constitutes substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Serv., 955 F.2d 765, 769 (1st Cir. 1991) (citing Rodriquez v. Sec'y of Health & Human Serv., 647 F.2d 218, 222 (1st Cir. 1981)).

The Plaintiff makes much of the fact that Dr. Ruggiano lacked the opportunity to review many of the Plaintiff's treatment records from his sessions at Wayside. (See Tr. 50-53.) Those treatment records were not a part of the administrative record. (Id. at 53 ("ALJ: . . . Well I just wanted to find out whether there are any other weekly records that would be out there. Apparently I'm being told that they're not out there, or they haven't been produced by the doctor. So the medical evidence is what you have before you, Doctor [Ruggiano].").) The missing records pertained

16

primarily to 2007. (Id. at 50 (". . . the only thing that I have in terms of treatment notes in '07 is the Wayside, Exhibit 17 report which shows two, two visits.").) The opinion letter from Ms. Cunningham was solicited in part to address this shortage of records for that period. (Id. at 52 ("ATTY #2: And part of the reason that we were attempting to be responsive to the doctor's question was the reason that we asked Ms. Cunningham to summarize the entire period of time that she worked with him, and I believe it's her letter dated March 4, 2009 marked 23F.").) Her opinion is undermined because she believed he was sober at a time he admitted he was still drinking. Dr. Ruggiano's relevant testimony, however, was based on the plentiful information that he possessed with regard to the more recent time period of 2008-2009. Specifically, Dr. Ruggiano testified:

> Well from the treating record I have May '04 to January '06, I have a lot of psychopathology identified at Arbor Counseling and Lawrence Hospital. A lot of alcohol problems and a chaotic interpersonal life with anxiety. Then I have a lot of reports, recent reports from Ms. Cunningham and Wayside facility, and these reports are in '08 and '09, and they describe him as doing very well in school, extremely well one of them says. He's doing very well in school, grades are good. A report even from the school it says he's doing a great job. So the material I have in '08 looks as though he's no longer drinking, and he's doing very well in terms of anxiety, and relationships. Relative to the three visits I have in the time period in question, it's Wayside, Exhibit 17, and it shows that the function is poor, the global functions are 50, but there is alcohol abuse named in, in that record, so he's drinking at that time

17

period, and he has trouble with relationships and
anxiety.

(Id. at 53-54.) Dr. Ruggiano's conclusions about the Plaintiff during the time period of mid-2008 to 2009 are therefore supported by substantial evidence in the form of medical records and reports from the hairdressing school. It was this evidence that allowed Dr. Ruggiano to conclude that the Plaintiff was not severely impaired by his anxiety in the absence of substance abuse: "Well in this time period that I have namely from Exhibit 17, I would not be able to differentiate alcohol from his other psychopathology. However, with the new material that I have showing me that in '08 to the present even in '09, he's doing very well without alcohol that allows me to say that it was material." (Id. at 56.)

Moreover, plaintiff himself conceded in his testimony he was drinking excessively through 2008 on weekends even though his probation testing was negative. While there is a mixed record about the extent of his drinking from December, 2006 to October, 2008, this court "may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and [his] findings are conclusive provided they are supported by substantial evidence."

18

Edwards v. Commissioner of Social Sec., 654 F. Supp. 2d 692, 705 (W.D. Mich. 2009). Because Dr. Ruggiano's testimony is based on relevant medical records, the ALJ's determination that plaintiff did not meet his burden is supported by substantial evidence.

## VI. ORDER

Defendant's Motion for An Order Affirming the Decision of the Commissioner is **ALLOWED** and Plaintiff's Motion to Reverse is **DENIED**.

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge